Bradley D. Owens, Esq.
Raymond E. Goad, Jr., Esq.
Jermain, Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Facsimile: (907) 563-7322

Attorneys for Jerry Sjolander, Cindy Anderson, Cheryl Guyett,
James Aronow, Julye Neel, Kristin Shank and Debi Wilson.

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| LEWIS KING DEANS,<br><br>       Plaintiff,<br><br>vs.<br><br>ANCHORAGE SCHOOL DISTRICT,<br>et al.,<br>       Defendants. | Case No. 3:05-cv-00283-TMB |

## MEMORANDUM SUPPORTING
## MOTION TO DISMISS THE ANCHORAGE SCHOOL DISTRICT EMPLOYEE
## DEFENDANTS

**I.      INTRODUCTION**

Lewis King Deans appears to have sued defendants for denying him a free and

appropriate public education ("FAPE") under the Individuals with Disabilities Education

Act ("IDEA"). In his initial pleading entitled "Verified Motion of Summary Judgment,"

("Verified Motion") Mr. Deans attempts to allege that the Anchorage School District

("District") and certain employees of the District (collectively the "District Defendants") violated his civil rights by failing to provide him a FAPE.[1]

Mr. Deans has sued, among others, the District and seven employees of the District: Jerry Sjolander, Executive Director of Special Education, Cindy Anderson, Director of Secondary Special Education, Cheryl Guyett, Principal of Dimond High School, Julye Neel, Assistant Principal at Dimond High School, James Aronow, Special Education Department Chair at Dimond High School, Kristin Shank, School Counselor at Dimond High School, and Debi Wilson, School Psychologist at Dimond High School.[2]

The IDEA and Ninth Circuit case law provide a federal court has no subject matter jurisdiction over such a suit unless a plaintiff first exhausts administrative remedies. The exhaustion requirements applies to all suits for denial of FAPE under federal statutes. They do not differentiate between suits against public entities and suits against public employees. This court should dismiss the claims against the District Defendants because Mr. Deans has failed to exhaust his administrative remedies.

In the alternative, Mr. Deans fails to state a claim upon which relief can be granted because the enforcement scheme of the IDEA precludes an action predicated upon 42 U.S.C. § 1983. Finally, service of process is also insufficient as to Mr. Sjolander, Mr. Aronow, Ms. Neel, Ms. Shank and Ms. Wilson because none of these District Defendants were served in a

---

[1]     Mr. Deans has styled his pleading as a "Civil Rights Complaint" brought pursuant to 42 U.S.C. § 1983. *See* Plaintiff's Verified Motion of Summary Judgment, at unnumbered page 1. In addition, the procedural posture of this case is unusual. It appears as though this case was first filed by Mr. Deans on December 2, 2005. Subsequent to the order reopening this case, this court dismissed the case on December 6, 2006, eight days before Mr. Deans utilized the U.S. Marshals to attempt service of process on some of the District Defendants.

[2]     Plaintiff misspells several names on the summonses as well as the pleading.

manner comporting with Federal Civil Rule 4.  For these reasons, Mr. Deans' Verified Motion should be dismissed.

## II.     FACTS

The following facts are undisputed.

### A.     The Parties, The Summonses and The Service of Process.

On December 14, 2006, the United States Marshal Service delivered summonses which read that they were for Art Arnold, Krista Shank [sic], Debra Wilson, Julie Neal [sic], Cheryl Guyette [sic] and Jim Aranow [sic] to Dimond High School in Anchorage, Alaska.[3] None of the summonses delivered to Dimond High School contain Mr. Deans' address in the "Plaintiff's Attorney" portion of each summons.[4]

Along with the summonses, copies of both an "Order Granting Motion to Reopen" dated September 28, 2006 and a "Verified Motion of Summary Judgment" dated December 5, 2006 were also delivered by the Marshals Service to Dimond High School.  All of the documents, including each summons, were received by the Principal of Dimond High School, Cheryl Guyett.[5]  No summonses for the Anchorage School District, Jerry Sjolander or Cindy Anderson were delivered to Dimond High School.  Mr. Sjolander was provided a copy of a summons and Verified Motion by the Alaska Department of Education and Early Development, were it was sent by the Marshal Service and a copy of a summons and

---

[3]     Copies of the Process Receipts, Summons and envelopes (where mailed) are attached hereto as Exhibit 1.  The names are spelled here as they appear on the summons.  As noted above, all of the individuals with the exception of Mr. Arnold are employees of the Anchorage School District, and all District Defendants except Mr. Sjolander and Ms. Anderson are located at Dimond High School.

[4]     *See id.*  This appears to be contrary to this court's order of September 28, 2006 granting the motion to reopen this case.

[5]     *See id.*

complaint was mailed to Ms. Anderson at her District office.[6]  The District has not been served at all.[7]

> ### B.    Mr. Deans and His Mother Request Due Process Hearing, Then Fail To Pursue The Request To A Hearing.

As noted in his "Verified Motion," Mr. Deans and his mother, Felicia King, initially submitted a request for a due process hearing on October 4, 2005 concerning the matters now alleged in the Verified Motion.[8]  On October 24, 2005 Anchorage attorney Andrew Lebo was appointed as the independent hearing officer for the due process hearing.[9]  On October 26, 2005, Lebo contacted Ms. King to set up a pre-hearing conference.[10]  Ms. King informed Mr. Lebo that she was attempting to secure counsel and would not participate in any pre-hearing conference without counsel.[11]  Mr. Lebo suggested she contact the Disability Law Center.[12]  In addition, a resolution meeting was set pursuant to IDEA

---

[6]      Copies of Mr. Sjolander's and Ms. Anderson's summonses as well as copies of the mailing envelopes for same are also attached at Exhibit 1.

[7]      *See* Affidavit of Eudora Fraczek, attached hereto as Exhibit 2. Fed. R. Civ. P. 4(j) requires service of process to be made on the chief executive officer of a local government entity or by any method allowed for such service by the law of the state for the service of summons upon such defendant.  Alaska's Rule requires service upon the chief executive officer of a school district, chief clerk or secretary thereof.  *See* Alaska R. Civ. P. 4(d)(9).  No such service has been made.  To the extent that it is served in the future, the District anticipates that it will assert all applicable defenses contained herein, in addition to any others which may apply.

[8]      Verified Motion, at ¶ 30; *see also*, Notice of Due Process hearing request, attached hereto as Exhibit 3.

[9]      *See* November 25, 2005 Letter from Andrew Lebo, attached hereto as Exhibit 4.

[10]      *Id.* at p.1

[11]      *Id.*

[12]      *Id.*

mandates for October 31, 2005.[13]  Neither Mr. Deans nor Ms. King attended the resolution meeting.[14]

Mr. Lebo subsequently spoke to Ms. King on November 11, 2005 and informed her of a number of requirements, including the 45 day deadline for rendering a decision in due process matters and reminding her of an earlier request for her to provide a power of attorney authorizing King to act on Deans' behalf.[15]  Ms. King asserted that she had not yet secured counsel for the due process hearing.

Thereafter, on November 21, 2005 Ms. King appears to have become displeased with Mr. Lebo and stated her displeasure in a letter dated November 15, 2005.[16]  Mr. Lebo addressed Ms. King's concerns in correspondence dated November 25, 2005 and also directed the parties to meet and confer about pre-hearing conference dates, to consider dates for the due process hearing and again requesting Ms. King for the power of attorney.[17] Thereafter, it appears that neither Mr. Deans nor his mother were willing to communicate with either the hearing officer or counsel for the District regarding the pre-hearing conference or the hearing itself, although during this time it appears that Mr. Lebo attempted to assist Mr. Deans in finding counsel.[18]  Hearing Officer Lebo issued a Notice of Intent to Dismiss Due Process Hearing on February 14, 2006.

---

[13]      *Id*. at p. 2

[14]      *Id*.

[15]      *Id*. at pp. 2-3

[16]      *Id*. at pp. 3-4

[17]      *Id*. at pp. 4-5

[18]      *See* December 5, 2005 letter from Brad Owens to Andrew Lebo and parties, attached as Exhibit 5; December 8, 2005 letter from Brad Owens to Andrew Lebo and parties, attached as

Essentially by November 11, 2005, Mr. Deans and Ms. King stopped communicating with Mr. Lebo, thereby abandoning the process.[19]  On May 19, 2006 Lebo dismissed the due process hearing without prejudice, stating in his order that "I cannot judge the validity of Student's views, however, because I've been unable to hold a hearing due to the inability or the unwillingness of the Parent and Student to communicate with me."[20]  Hearing Officer Lebo continued:

> The due process hearing procedures established by the Individuals with Disabilities Education Act and related state statutes require participation by the parent requesting the hearing; and when the student is over age 18, his or her participation is necessary as well.  I have waited a considerable amount of time since issuing the February 14 Notice of Intent to give Parent and Student an additional opportunity to get in contact with my office and participate in the process.  The utter lack of participation by both Parent and Student in this matter, however, leaves me no choice but to order as follows:  this matter is hereby dismissed without prejudice to Student's right to file a new request for hearing on the issues raised by Parent in this matter.[21]

### C.     The Statutory and Regulatory Protections for Special Education Students.

The IDEA appropriates federal funds for state special education programs, and makes them available on the condition that states implement policies assuring a "free appropriate public education," or FAPE.[22]  The IDEA confers upon disabled students an enforceable substantive right to public education in participating states and conditions

---

Exhibit 6; December 20, 2005 letter from Andrew Lebo to Deans and King, attached as Exhibit 7; February 10, 2006 letter from Brad Owens to Andrew Lebo and parties, attached as Exhibit 8; February 17, 2006 letter from Andrew Lebo to Deans and King, attached as Exhibit 9;

[19]     *See* Hearing Officer's Order dated May 19, 2006, attached hereto as Exhibit 10, at p. 3.

[20]     *Id*. at p. 4.

[21]     *Id*.

[22]     20 U.S.C. §§ 1400(c), 1412(a).

federal financial assistance upon a state's compliance with the Act's substantive and procedural goals.[23]

The IDEA also requires states to establish administrative remedies: procedures giving parents an opportunity to present complaints concerning "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."[24]   After making their complaint, parents are entitled to "an impartial due process hearing."[25]   A decision of the due process hearing shall be final, except that any party aggrieved by the finding and decision has the right to bring a civil action with respect to the complaint presented, in state or federal court.[26]

Before bringing a suit based on a violation of the enforceable right granted in the IDEA, a complainant must exhaust the due process hearing procedures described above, unless a recognized excuse from this requirement applies.[27]   The exhaustion requirement applies to lawsuits under any "federal laws protecting the rights of children with disabilities . . ." and specifically mentions the Constitution, the Americans With Disabilities Act and Title V of the Rehabilitation Act of 1973.[28]

Alaska has implemented the IDEA's due process hearing requirements through Alaska Stat. 14.30.193.  This provision applies the due process hearing procedures discussed

---

[23]     *Porter v. Board of Trustees of Manhattan Beach Unified School District*, 307 F.3d 1064, 1066 (9th Cir. 2002).

[24]     20 U.S.C. § 1415(b)(6).

[25]     *Id*. at § 1415(f).

[26]     *Id*. at § 1415(i)(1)(A), (i)(2)(A).

[27]     *Id*. at 1415(l).

[28]     *Id*.

above to "any issue related to the identification, evaluation or educational placement of the child, or the provision of a free, appropriate, public education to the child."[29]

In Alaska, a due process hearing is initiated by providing a written notice to the other party to the hearing.  After the request is filed, the school district requests the Alaska Department of Education to appoint an independent hearing officer.[30] Under the accompanying regulations, the hearing officer must take steps to ensure that within 45 days after the request's receipt the hearing is immediately commenced and completed, including any mediation; and that a final administrative decision is rendered within that time, unless a continuance has been granted.[31]  The hearing must be conducted at a time and place reasonably convenient to the parent, the child and the school district.[32]

At the hearing, the parties have extensive procedural rights and protections comparable to those at a trial, including the right to call and cross examine witnesses, introduce exhibits and evidence and to receive the written finding of facts and decision of the hearing officer.[33]  The hearing officer's decision is the final administrative determination in the case and is binding on all parties.[34]

---

[29]     Alaska Stat. 14.30.193(a).

[30]     *Id*. at 14.30.193(b).

[31]     4 AAC 52.550(f).

[32]     *Id*. at 52.550(b)

[33]     *Id*. at 52.550(e).

[34]     Alaska Stat. 14.30.193(e).

D.       **Synopsis of the Material Allegations in the Verified Motion.**

The District Defendants only set forth the allegations in Mr. Dean's Verified Motion. In doing so the District Defendants do not admit that any of the facts listed below are true; they are presented and summarized solely to support defendants' exhaustion argument.

According to Mr. Deans, he filed for a due process hearing on October 4, 2005 "for Continuum of Service, and private education with public funding based upon his last Legal Agreement and Specialized Designed Instruction because Dimond High School and Anchorage School District failed to provide Fape [sic] in a timely manner."[35]  This is precisely what Deans alleges in his Verified Motion as well.

Mr. Deans' theories of liability seem to focus on his belief that the District "abolished his IDEA eligibility" and that the District "illegally unilaterally displaced" [Deans] by placing him on a Section 504 plan rather than implement 10 hours of special education services "first offered" to Deans.[36]  Mr. Deans expands on this by asserting a central theory of liability which appears to concern his right to "stay put" in his "then current educational placement" as a result of alleged litigation occurring in Vermont, and the denial of a free appropriate public education as a result of the District's violation of the Mr. Dean's stay-put.[37]

The allegations against the individual defendants are non-existent as to Ms. Guyett, Mr. Aronow, and Mr. Sjolander.  Mr. Deans is vague with respect to allegations against Ms.

---

[35]       Verified Motion at ¶ 30.

[36]       *Id.*, at ¶ 14C.

[37]       *Id.*

Wilson and Ms. Shank except to allege that each signed a prior written notice "proposing to change Lewis King Deans IDEA eligibility status to an expired 504 . . . ."[38]  Mr. Deans is somewhat more specific when he alleges that Cindy Anderson "put Lewis under a 504 [plan] only, without giving prior written notice and without agreement from Lewis Deans and Felicia King . . . ."[39]

Mr. Dean's requested relief appears to include reimbursement for past services from Sylvan and placement in a private school at public expense[40] Mr. Deans also seeks an injunction, although he does not state the injunctive relief he seeks.[41]

## III.    LEGAL ARGUMENT

### A.    Mr. Deans' Failure To Exhaust Administrative Remedies Deprives This Court of Subject Matter Jurisdiction Over His Case.

When federal statutes provide for administrative hearings and remedies -- and make those remedies mandatory -- failure to exhaust those remedies is fatal because it deprives a court of a subject-matter jurisdiction.[42]  No one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.[43]  This rule applies squarely to the IDEA's exhaustion rule, 20 U.S.C. § 1415(l).[44]  Here, as in *Hoeft,*

---

[38]      *Id.*, at ¶¶ 46-47.

[39]      *Id.* at ¶48; *see also*, ¶¶49-50.

[40]      *Id.* at ¶¶ 14D, 20.

[41]      *Id.* at ¶ 16.

[42]      *See Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1274 (9th Cir. 1999); *Banks v. Modesto City Schools District*, 2005 WL 2233213, *6 (E.D. Cal. Sept. 9, 2005).

[43]      *Myers v. Bethlehem Ship Building Co.*, 303 U.S. 41, 50-51 (1938).

[44]      *Hoeft v. Tucson Unified School District*, 967 F.2d 1298, 1302 (9th Cir. 1992)

this lack of subject matter jurisdiction provides the basis for a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.[45]

A Rule 12(b)(1) motion can operate as either a facial attack upon a complaint's allegations (together with judicially-noticeable facts and undisputed facts), or a "speaking" motion based on extrinsic evidence.[46] Here, either attack is appropriate. Since Fed. R. Civ. P. 8(a) requires plaintiffs to allege the grounds for subject matter jurisdiction on the complaint's face, plaintiffs' failure here to allege facts showing exhaustion is grounds for a Rule 12(b(1) "facial-attack" motion.[47]

Conversely, the Court can address defendants' motion as a "speaking" motion under 12(b)(1). It can consider the extrinsic evidence; and if there is any dispute, it can weigh the evidence and determine the facts to satisfy itself as to its power to hear the case.[48]  Here, however, the court need not weigh the evidence; as explained below, the undisputed facts show that Mr. Deans failed to satisfy the exhaustion requirement.

1.    <u>Mr. Deans Has Not Exhausted His Administrative Remedies</u>.

Mr. Deans bears the burden of establishing subject matter jurisdiction; and the court presumes lack of jurisdiction until he establishes otherwise.[49]  Here, Mr. Deans' allegations

---

[45]        *Id.*

[46]        *Thornhill Publishing Co. v. Gen. tel. & Elec. Corp*, 594 F.2d 730, 733 (9th Cir. 1979); *Gould Electronics v. United States*, 220 F.3d 169, 176 (3rd. Cir. 2000).

[47]        *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

[48]        *Roberts v. Carrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

[49]        *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

contained in the Verified Motion do not meet that burden.  Mr. Deans alleges no facts showing exhaustion of remedies. That is grounds for dismissal under Rule 12(b)(1).[50]

Further, the exhibits to the District Defendants' Memorandum establish that Mr. Deans cannot satisfy this burden.  Those exhibits establish that Mr. Deans essentially abandoned his 2005 request for a due process hearing, and he never renewed it.  The initiation of a due process hearing request which does not proceed to a due process hearing does not constitute exhaustion of administrative remedies.[51]  Here, Mr. Deans clearly had access to the administrative procedures established in Alaska.  He (and his mother) initiated a due process request.  IHO Lebo attempted to assist Mr. Deans and Ms. King with processing his request.  Initially, Mr. Deans and Ms. King delayed.  When neither Mr. Deans nor his mother would communicate with the IHO, Mr. Lebo could do nothing more than dismiss the matter without prejudice, which he did on May 19, 2006.

Mr. Dean's sole attempt to address the exhaustion issue are his statements in paragraphs 85 and 94 of the Verified Motion that he "could not go forward" with the due process hearing because of the "Procedural Breach of the Stay-Put Provisions" and that a due process hearing would be "futile" because the District disagreed with (and allegedly breached) Mr. Dean's "stay-put" educational placement.  Notably, Deans has failed to allege any facts to support this apparent "futility" argument.

---

[50]    *See, e.g., Honig v. Doe*, 484 U.S. 305, 326-27 (1988) (failure to exhaust administrative remedies under the IDEA before bringing a civil action in federal court deprives the court of subject matter jurisdiction over the action).

[51]    *See, e.g.*, *Tyler B. v. San Antonio Elem. Sch. Dist.*, 253 F.Supp.2d 1111, 1118 (N.D. Cal. 2003) (initiation of a state level review must culminate with due process hearing to fully exhaust the administrative remedies available under the IDEA, where a due process hearing request is available to the parties).

Moreover, these allegations ignore the fact that the due process hearing is statutorily authorized to hear claims precisely related to "educational placement of the child."[52] Hearing Officers have authority to make placement decisions.[53] Concomitantly, in *Robb v. Bethel School District # 403* the Ninth Circuit held that "[w]here, as here, a plaintiff has alleged injuries that could be redressed *to some degree* by the IDEA's administrative procedures and remedies, then the courts should require exhaustion of administrative remedies."[54] Further, any doubts about whether the administrative remedies will address a particular injury should be resolved in favor of requiring exhaustion.[55] *Robb* applies here. Mr. Deans generally asserts and implies that the District and the District Defendants are continuing to fail and refuse to provide a free and appropriate public education to him. He alleges continuing violation of substantive rights caused by the defendants, and seeks injunctive relief.

The gravamen of Mr. Dean's Verified Motion is that he asserts he was (and is) being denied a free, appropriate, public education contrary to the requirements of the IDEA. He

---

[52] Alaska Stat. 14.30.193(a) ("A school district or parent of a child with a disability may request a due process hearing on any issue related to identification, evaluation, or educational placement of the child, or the provision of a free, appropriate, public education"); *see also,*34 CFR 300.507(a)(1).

[53] In placement disputes, the decision-maker's authority is not simply limited to accepting or rejecting the placement at issue. Rather, they have considerable authority to determine what placement would be appropriate for that child. *See Letter to Eig*, 211 IDELR 174 (OSEP 1980). After determining the type of placement appropriate for a child with a disability, a hearing officer must order that type of placement. Although a hearing officer cannot order a district to establish a particular class, the district may find it necessary to establish a class if it does not have available a continuum of placement options that includes the type of placement ordered by the hearing officer. *See Letter to Mayerson*, 211 IDELR 384 (OSERS 1986).

[54] *Robb v. Bethel School District # 403*, 308 F.3d 1047, 1054 (9th Cir. 2002) (emphasis added).

[55] *Id*. at 1050.

asserts that his proper educational placement was violated, pursuant to the IDEA. He alleges that he is eligible for special education services, rather than services under a 504 plan. The IDEA and Alaska statutes apply due process hearing procedures to precisely this type of dispute. Mr. Deans has therefore alleged injuries that can be redressed, to some degree, by the IDEA's administrative procedures and remedies. He was required to exhaust those remedies. His failure to do so bars this action.

  2. <u>The IDEA and Ninth Circuit Precedent Establish That the Exhaustion Requirement Applies to 42 U.S.C. § 1983, Under Which Mr. Deans Sues.</u>

As outlined above, all of Mr. Deans' allegations arise out of disputes concerning his education and treatment under the IDEA. His Verified Motion is therefore subject to the IDEA's exhaustion requirement as enumerated at 20 U.S.C. § 1415(l).

Although this exhaustion requirement does not expressly mention 42 U.S.C. § 1983, it does mention the Constitution and "other federal laws protecting the rights of children with disabilities . . . ." Further, the Ninth Circuit has ruled that the exhaustion requirement applies to suits under 42 U.S.C. § 1983 that arise out of IDEA issues.[56] Mr. Deans' failure to pursue his due process hearing rights therefore deprives this court of subject matter jurisdiction to hear his claims.

**B.** **Mr. Deans Fails to State A Claim For Relief Because the Enforcement Scheme of the IDEA Precludes an Action Predicated Upon 42 U.S.C. § 1983.**

Arguing in the alternative, should this court find that Mr. Deans does not need to exhaust administrative remedies, his claims must nevertheless be dismissed. As

---

[56] *Id.* at 1048.

demonstrated above, Deans' Verified Motion asserts a claim under § 1983 for alleged violations of the IDEA.  Even accepting all of the factual allegations Mr. Deans pled as true and drawing all inferences in his favor,[57] he cannot state a claim for relief because the IDEA does not create private rights that may be enforced through § 1983.[58]

This concept, which defendants here refer to as "*Gonzaga* preclusion" or "*Blessing* preclusion" reflects the principle, in pertinent part, that a statute, such as the IDEA, cannot be enforced through § 1983 where Congress has demonstrated a contrary intent.[59]  "This intent may occur expressly or, more commonly, impliedly, by Congress' 'creat[ion] [of] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'"[60]

The court in *Alex G.* concluded that the IDEA "contains a carefully crafted administrative framework, which litigants must use to bring claims under the statute."[61] Although admittedly in the minority of courts who have considered this issue, the court

---

[57]     Under Fed. R. Civ. P. 12(b)(6), the court must accept the allegations contained in Mr. Deans' Verified Motion as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  Setting aside the question of whether the allegations in Mr. Deans' Verified Motion are "well-plead" the court must give Mr. Deans' the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the Verified Motion.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S 746, 753 n.6 (1963).  However, the court cannot assume that Mr. Deans can prove facts he has not alleged.  A*ssociated General Contractors of Calif., Inc. v. Calif State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Finally, and importantly for purposes of Mr. Deans' Verified Motion, the court does not have to assume that legal conclusions cast in the form of factual allegations are true.  *See*, *United States v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

[58]     *Alex G. v. Board of Trustees of Davis Joint Unified School Board*, 332 F.Supp.2d 1315, 1319 (E.D. Cal. 2004)

[59]     *Id.* at 1317 (citing *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)).

[60]     *Id.* (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 n. 4 (2002) (internal citation omitted)).

[61]     *Id.* at 1319.

rejected the notion that prior amendments to the IDEA abrogate the Supreme Court's decision in *Smith v. Robinson*[62] which held that the IDEA is the exclusive vehicle for enforcing educational claims of special education children[63], noting that the U.S. Supreme Court continued to cite to *Smith* as an example of a statute with "a sufficiently comprehensive enforcement scheme to preclude its enforcement through § 1983" after adoption of IDEA amendments.[64]

Here, the remedies afforded under the IDEA, such as compensatory education, reimbursement, injunctive relief and private placement are consistent with the remedies Mr. Dean's either expresses or implies in the Verified Motion. There is little better example of how the remedial scheme of the IDEA is sufficiently comprehensive than the fact that the remedies available under the IDEA are precisely the remedies Mr. Deans' seeks here under § 1983.

### C.    Service of Process Was Insufficient.

Federal Rule of Civil Procedure 12(b)(5) allows for dismissal due to insufficient service of process. Unlike Rule 12(b)(4) challenges for insufficient process, a Rule 12(b)(5)

---

[62]    468 U.S. 992 (1984).

[63]    *Id*. at 1009. The Court determined that the IDEA's remedies were comprehensive enough to displace any independent remedies otherwise available under the 14th Amendment or Rehabilitation Act. *Id.* at 1012-13.

[64]    *Alex G.*, 332 F.Supp.2d at 1319 (citing *Blessing*, 520 U.S. at 347-48); *Wright v. Roanoke Redev. and Hous. Auth.*, 479 U.S. 418, 424-025, 427 (1987). In an early case, the Ninth Circuit similarly held that the IDEA enforcement scheme  was sufficiently comprehensive to preclude § 1983 enforcement. *See Department of Education v. Katherine D.*, 308 F.3d 1047, 1049, 50 (9th Cir. 2002). *Katherine D.* retains its vitality and is still binding precedent. However, more recent cases holding that administrative remedies must be exhausted have assumed , without deciding, that § 1983 is enforceable because the IDEA's exhaustion provision applies to § 1983 actions asserting violations of the IDEA. *See, e.g., Robb v. Bethel School District # 403*, 308 F.3d 1047 (9th Cir. 2002)

challenge concerns not the form of the summons, but the service of the summons on defendants. Here the service of the summonses of Mr. Sjolander, Mr. Aronow, Ms. Neel, Ms. Shank and Ms. Wilson were insufficient in that none of the summonses were served pursuant to either Federal Rule of Civil Procedure 4 or an applicable state rule.[65]

Service upon individuals can be accomplished either pursuant to law of the state in which the district court is located, or in which service is affected, "for the service of a summons upon a defendant in an action brought in the court of general jurisdiction of the State."[66] Alternatively, personal service is accomplished by delivering a copy of the summons and complaint to the individual personally or by leaving copies of the same at the individual's house or "usual place of abode with a person of suitable age and discretion then residing therein" or by delivering the summons and complaint to an agent authorized to receive service of process "either by appointment or by law."

Neither Mr. Sjolander, Mr. Aronow, Ms. Neel, Ms. Shank and Ms. Wilson were served either personally or by mail. None of the individual defendants were served at their homes or "usual place[s] of abode." It is clear the District Defendants exhibits that all of the summonses delivered to Dimond high School were left with Ms. Guyett. It is equally clear that Mr. Sjolander's, a District employee, summons was sent to the wrong address in the wrong city. There is no evidence that Ms. Guyett was authorized to act as the agent for any of the individual defendants whose summonses were delivered to Dimond High School. Finally, there is no authorization in either the state the federal civil rules for service of

---

[65]     As noted earlier, it does not appear that the District has been served; accordingly no argument is made as to dismissal of the District in this motion.

[66]     Fed. R. Civ. P. 4(e)(1).

Memorandum Supporting Motion to Dismiss
District Defendants
*Deans v. Anchorage School District, et al*, Case No. 3:05-cv-00283-TMB          Page 17 of 19
03227.1212/00142684

individuals by simply leaving a copy of the summons and complaint at the individual's usual place of business or employment.

None of the methods by which service can be effectuated under state law applies here. Under Alaska R. Civ. P. (4)(d)(1) service of individuals can be accomplished either by personally serving the individual or by leaving a copy of the summons and complaint at the dwelling or "usual place of abode with some person of suitable age and discretion," much like the federal rule. As noted above, service was not accomplished by any of those methods for the aforementioned District Defendants. Accordingly, service of process was insufficient and Mr. Dean's Verified Motion must be dismissed as to Mr. Sjolander, Mr. Aronow, Ms. Neel, Ms. Shank and Ms. Wilson on that basis, pursuant to Fed. R. Civ. P. 12(b)(5).

## III.     CONCLUSION

For the foregoing reasons, the Verified Motion against District Defendants Jerry Sjolander, Cindy Anderson, Cheryl Guyett, Julye Neel, James Aronow,, Kristin Shank, and Debi Wilson should be dismissed.

DATED at Anchorage, Alaska this 3rd day of January, 2007

JERMAIN, DUNNAGAN & OWENS, P.C.
Attorneys for, Jerry Sjolander, Cindy
Anderson, Cheryl Guyett, James Aronow, Julye
Neel, Kristin Shank and Debi Wilson.


By:    */s/ Raymond E. Goad, Jr.*    ___
        Bradley D. Owens
        Alaska Bar No. 7610122

        Raymond E. Goad, Jr.
        Alaska Bar No. 0111062

        Jermain, Dunnagan & Owens, P.C.
        3000 A Street, Suite 300
        Anchorage, AK 99503
        Tel: (907) 563-8844
        Fax: (907) 563-7322


**CERTIFICATE OF SERVICE**
The undersigned hereby certifies that on this
3rd day of January, 2007, a true and correct
copy of *Memorandum Supporting Motion to*
*Dismiss District Defendants* was served on:

Lewis King Deans
310 West 76th Ave., Apt. E
Anchorage, AK 99518

by first class mail, if an address is indicated above,
or by electronic means through the ECF system as
indicated on the Notice of Electronic Filing.


*/s/Raymond E. Goad, Jr.*
Raymond E. Goad, Jr.
3227.1212/142670