IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LEWIS DEANS,<br><br>    Plaintiff,<br><br>vs.<br><br>ANCHORAGE SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Case No. 3:05-cv-00283-TMB<br><br>ORDER DENYING <u>RECONSIDERATION</u> |

On December 2, 2005, Lewis King Deans, representing himself, filed a civil complaint claiming that he was denied his rights to certain educational benefits based upon his disability.[1] The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that, *inter alia*, he failed to exhaust his administrative remedies as required by the Individuals with Disabilities Education Act

---

[1] *See* Docket No. 2; *see also* 20 U.S.C. § 1415(m)(1) ("when a child with a disability reaches the age of majority ... all other rights accorded to parents under this subchapter transfer to the child.").

(IDEA),[2] Mr. Deans opposed the motions, and the defendants filed replies.[3] On May 10, 2007, this Court dismissed Mr. Dean's case, without prejudice, for failure to exhaust his administrative remedies.[4]

Mr. Deans has now moved for reconsideration of that dismissal, claiming that the Court was required to stay his Individualized Educational Program (IEP), regardless of any administrative exhaustion requirements.[5] However, as explained before, the only court within this Circuit that seems to have addressed, in a published opinion, the issue of whether one must exhaust claims arising under the IDEA's stay-put provisions,[6] found that such exhaustion is required.[7]

---

[2] See Docket Nos. 37, 39, 41; see also 20 U.S.C. § 1400, et seq.

[3] See Docket Nos. 44, 49, 50.

[4] See Docket Nos. 59, 60, 61.

[5] See Docket No. 62.

[6] See 20 U.S.C. § 1415(j) (IDEA contains a "stay put" provision requiring that, "during the pendency of any proceedings [regarding a parent's or guardian's complaints about an Individualized Education Program (IEP)], unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child.").

[7] See R.K. ex rel. T.K. v. Hayward Unified School Dist., 2007 WL 174418 at *2 (N.D.Cal. Jan. 22, 2007) ("In his reply brief, Plaintiff argued for the first time that this Court should issue an original stay put order under the IDEA, because the statute authorizes such an order during 'the pendency of any proceedings conducted pursuant to [section 1415].' ... Plaintiff's argument fails for several reasons. ... [T]o the extent Plaintiff is seeking action from this Court, pending resolution of the dispute as to where Plaintiff should receive future educational services, Plaintiff is required to first exhaust the administrative procedures.").

As also explained, and as pointed out by Mr. Deans and the defendants, there was no up-to-date Individualized Educational Program (IEP) to stay put, since Mr. Deans was new to the Anchorage School District, and the plan that Mr. Deans wants to stay put was decertified in Vermont in May, 2004, before Mr. Deans moved to Anchorage.[8] And according to documentation provided by Mr. Deans, he has refused to be evaluated in order to determine his current educational needs.[9]

---

[8] *See* Docket No. 49 at 6; *see also* Docket No. 52-2 (submitted by Mr. Deans, indicating that there was a decertification evaluation in Vermont in May, 2004, which Mr. Deans claims was "illegal" and was being challenged in a federal court in Vermont); No. 52-6 (indicating that the IEP Mr. Deans wished to have "stay put" was implemented in 1999, six years before the initiation of administrative proceedings).

[9] *See* Docket No. 52-2, 52-6 & 52-7; *see also, e.g., Andrew B. v. Board of Educ. of Community High School*, 2006 WL 3147719 (N.D.Ill 2006) (Affirming administrative decision in favor of the Board of Education, the court explained: "During the fall semester of Andrew's senior year, the School District notified Andrew and his parents on more than one occasion that a re-evaluation of Andrew's individualized education program needed to be completed by February 2004 in order for the high school to be able to continue providing special education services for Andrew. The School District also explained to both Andrew and his parents in the letters that were sent them that the School District would need written consent from Andrew to perform another comprehensive case study evaluation since he now was over eighteen years-old and his parents no longer were his guardians. When the School District did not receive any response from Andrew or his parents, the chairman of Special Education Department at Downers Grove South High School discussed the re-evaluation with Andrew at school, showed him the consent form, and requested Andrew to sign it. After discussing this with his father, Andrew declined to sign the consent form.").

**IT IS THEREFORE ORDERED:**

1. Mr. Dean's motion for reconsideration is DENIED;[10] and

2. This case is CLOSED.

DATED this 25th day of June, 2007, at Anchorage, Alaska.

/s/TIMOTHY M. BURGESS
United States District Judge

---

[10] Although Mr. Deans notes that new United States Supreme Court law now states that parents may bring suit on behalf of their children under IDEA, that decision has no impact on this Court's decision to dismiss for failure to exhaust administrative remedies. *See Winkelman ex rel. Winkelman v. Parma City School District*, 127 S.Ct. 1994, 2005 (2007) ("Parents may seek to enforce this mandate ["that States provide a child with a free appropriate public education 'at public expense,'"] through the federal courts, we conclude, because among the rights they enjoy is the right to a free appropriate public education for their child."). It is clear, in any event, that Mr. Deans' mother, Ms. King, continues to draft the pleadings in this case. *Compare* Docket No. 2 (complaint), and documents filed by Ms. King in Case No. 3:06-cv-00071-TMB, with later documents signed and filed by Mr. Deans alone in current case. Moreover, on April 3, 2006, the Court granted Mr. Deans' request for assistance in securing volunteer counsel, but because Mr. Deans (through Ms. King) failed to communicate with the pro bono program, and failed to submit requested paperwork, they were unable to secure counsel for him. *See* Docket Nos. 10, 15 (the Court did not specify the reasons for the inability to secure counsel at the time, so as not to prejudice Mr. Deans in this case).